PilePro, L.L.C. v. Humphrey Chang Okay, Mr. Kalari. May it please the Court, Your Honors. This appeal is brought by our clients Richard Heindel and Steel Calm Limited on two very narrow issues. I think it's important to note at the outset, Your Honors, that the second issue is now moot because the district court has corrected a typo in footnote 5. And I assume the Court is aware of that. We are, yes. So from our standpoint, the district court has clarified that he — that Mr. Heindel gave up his interest in PilePro, L.L.C. when he transferred it to his company Steel Calm. We don't take any issue with that. And from our standpoint, we would not have any — we wouldn't have appealed footnote 5 had the typo not been there. So as far as we're concerned, this appeal is now just on the one narrow issue aimed solely at the district court's finding of fact, conclusion of law, and declaratory judgment that, quote, Contexto is wholly or partially owned by PilePro, L.L.C., Enrico Ferroni, and Roland Hartzmoser. And in this appeal, we ask this Court to strike that declaration in the judgment. And as it appears in the findings of fact and conclusions of law, we ask this Court to set aside, vacate, and strike that portion of the order. Now, there's three legal grounds for this Court to reverse the district court on that specific finding, conclusion, and declaration that Contexto is wholly or partially owned by PilePro, L.L.C., Enrico Ferroni, and Roland Hartzmoser. And the first ground is that the district court's declaration improperly exceeded the bounds of the party's pleadings and the matters adversely — adversarially at issue in this trial. The second ground, which is the one I'm going to focus on the most, is the district court's declaration is not permitted or authorized by the Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, because it fails to definitively resolve any controversy between the parties in this particular lawsuit. But two of these people weren't parties. Actually, three, Your Honor. You're correct. On its face, the judgment affects four persons, Contexto, PilePro, L.L.C., Mr. Hartzmoser, and Mr. Ferroni. PilePro, L.L.C., is the only party. Contexto is a Swiss company, which is a bear share company. It's not a party. Enrico Ferroni and Mr. Hartzmoser are both Swiss residents who are trustees. So that is one of our major complaints with the ruling, is that it is adjudicating the rights of nonparties. And just so I can finish this intro, the third ground is the district court's declaration lacks sufficient evidentiary support. But in this argument, with my limited time, I'm going to focus — I would like to focus on the district court's declaration not being permitted or authorized under the Federal Declaratory Judgment Act. And if this Court agrees, it doesn't matter whether the relief was requested, which we don't think it was, or whether there's sufficient evidentiary support, which we don't think there was. And I think, Your Honor, the starting place is the language of the Act itself, 28 U.S.C. 2201. And in relevant part, it says, And then it goes on and says that any such declaration shall have the full force and effect of a final judgment. Importantly, the Act doesn't contain any provisions indicating that declaratory judgments are authoritative vis-a-vis nonparties to the litigation. But the ownership was sort of a zero-sum game, right? Either if a party owned it in whole or in part, that would affect the ownership interest of one or more nonparties. Well, I think it goes to — Mr. Heindel didn't put the ownership of — his ownership interest in context of an issue. There's nothing in the counterclaim that says that. The only — there's one sentence in this 114-page complaint that puts Contexo's ownership in interest, and it's in paragraph 289 of the corrected complaint. And that basically says they wanted a judicial declaration that went as a stockholder in Contexo. So they bore the burden of proof on that, and they failed. And it really was after they failed that they changed their game during the closing argument and decided to — to argue that somehow it was a pile-probe company. I think what it comes down to is whether they requested it or not. The Court doesn't have jurisdiction to — to rule on the ownership interests of nonparties, especially nonparties that are not even in this country. And so that's really the first fundamental flaw with the declaration, is that — that the Court doesn't have jurisdiction over Contexo, Ferroni, or Hartz & Moser. And without getting too deep into it, Pile Pro sued Contexo in 2010 in Switzerland. And that — that litigation went on for five years until May of 2015, when the Swiss court sided with Contexo. And then Pile Pro appealed that, and it wasn't until August or September of 2016, after we filed our opening brief, that that Swiss ruling was — was affirmed in the Swiss courts. So Pile Pro had its day in court. What was the ruling? Was it injunctive relief or damages? Well, in that case, what Pile Pro was alleging, much like it was here, is that the transfer of patents, non-U.S. patents from Pile Pro LLC to Contexo, were somehow fraudulent, and that Mr. Heindel didn't have the authority to sign this March 25, 2010, assignment agreement, which is — was Exhibit 530 in the case. And that was their same theory here. And if you — because the Court is granting declaratory relief, what it starts with is, in paragraph 289 of the corrected complaint, the first — the first statement that says there's an actual controversy is whether Heindel had the authority to sign the assignment agreement. And it was in the context of that specific — that was the case of controversy, that the controversy that they alleged in paragraph 289 of the corrected complaint was that Heindel didn't have the authority to enter that — right here it says, paragraph 288, this is the ROA-272, an actual controversy now exists between Pile Pro LLC, Pile Pro Inc., and Wendt, on the one hand, and the RICO defendants, on the other hand, concerning Heindel's authority to assign or transfer Pile Pro LLC's non-U.S. patent rights to Contexo. The declaratory relief claim only has two paragraphs. Then based on that, what they're identifying as the controversy, they ask for five declaratory judgments, one of which, D, is that Wendt is a stockholder in Contexo. They never ask that Pile Pro LLC is a stockholder in Contexo. And their whole theory of the case was that Wendt and Heindel were supposed to be the stockholders in Contexo. That's what Wendt averred in 2010 in an affidavit. He said Contexo was 50 percent me and 50 percent Heindel. That was Exhibit 645 in the trial, and it's, I want to say it's 5425 is the ROA number. It's an affidavit in September of 2010, six years before the trial, or five years before the trial, and Wendt is saying it's 50-50. So they're never asking for, they never had any theory that Pile Pro LLC was a stockholder in Contexo. So if I go back to the, after the fundamental flaw of not having the parties, you also look at whether the statement, wholly or partially owned, that phrase in the declaration, it doesn't definitively resolve any controversy between the parties in this lawsuit or even the parties that it purports to bind. And really, it comes down to the cases that we cite. On pages 22 to 30 of our brief, we cite to the Act in nine different cases. If you look at their opposition, which only covers two-and-a-half pages, they don't cite any cases. They don't discuss a single of the nine cases that we cite, which talk about that the U.S. Supreme Court has observed that the declaratory relief is available only for, and this is the Public Services Commission case on page 23 of our brief, says it's only available for, quote, a concrete case admitting of an immediate and definitive determination of the legal rights of parties in an adversary proceeding. That same case says the decision must finally settle and determine the controversy. We cite the Vantage Trailers case on page 23. That's this Court, 567 F. 3rd 745, Fifth Circuit 2009. And it, that case says the Declaratory Judgment Act, 28 U.S.C. Section 2201A, requires actual controversy between the parties to the declaratory judgment action. It goes on to expressly note that the Supreme Court directs the dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of conclusive character. So even if we assume that they asked for the relief that the district court granted, there's just no authority for that. There's no jurisdiction. And it's not, it wouldn't be a request that finally settles and determines any controversy between these parties. In fact, what it does, it essentially creates controversy when there wasn't one before, meaning they essentially admitted that Heindel owned part of Contexo or Contexo in their pleadings, and they only retreated from that after they got this ruling. The other problem with it is that without any percentage of ownership or share ownership, how, the judgment isn't even enforceable. What are they, what could they do with that judgment? They can't do anything here against Contexo, Ferroni, or Hartz and Mozer. If they take it to Switzerland, which they're free to do, there's nothing in there that, that is any determination. I thought you said they validified the patent transfer. I'm not sure I heard your question. I thought you said the Swiss court said that the patent transfer was valid. The Swiss court said it was a valid sale between Contexo and Palpro LLC. And then Palpro LLC appealed that, and finally, after six years, the Swiss court, just at the end of last year, affirmed that. So that case is done. And consistent with what Judge Sparks ruled here, that Contexo is the lawful owner of the non-U.S. patents, that it was a valid sale, that the assignment agreement that Mr. Heindel signed was a valid assignment, that he did have authority. And essentially, in the five declarations that they asked for, they lost all five of them, not just the two that were at issue in this case. And specifically, they wanted a ruling that Heindel was not a stockholder or officer in Palpro, Inc. That was denied. That was actually the subject of footnote five. They wanted a finding that Heindel was not the CEO of Palpro, LLC. That was denied. They wanted a finding that Heindel did not have the authority to transfer or assign the non-U.S. patents to Contexo in what they called a backdated assignment. That was denied. The fourth one is, went as a stockholder in Contexo. That was denied. And the last one was that the backdated assignment is void and of no force and effect. And they didn't even put on any evidence that the assignment agreement was backdated. So I mean, this whole case was styled as an elaborate civil RICO fraud case, which they got there on the first day of trial, and they dropped all the RICO claims. And really, what they really wanted to do in this was invalidate the transfer of patents from Palpro, LLC to Contexo. That was really the whole heart of this case. And in that, they wanted a finding that Wendt was a stockholder in Contexo, and they had a complete failure of proof on that issue. And I guess I'll, since I have my limited time on this first part, is I would point out to the Court that their whole theory of the case and their contention was that Wendt had this individual interest in Contexo, and that Palpro was never to have a direct ownership interest of Contexo. Palpro was never to be a stockholder in Contexo. And one of the big problems in this case for Palpro is that Contexo is this bearer share company, which is permitted under Swiss law. And Heindel is the holder of those bearer shares. And Wendt admitted at trial that he had never possessed them, he had never even seen them, and he never contended that Palpro, LLC ever had possession of a bearer share. And that was the reason, well, it's really doing to the beneficial, their whole theory that the only reason that Palpro had any control over these patents, according to Wendt, is through their dual ownership. And that's why they focused their declaration on Wendt as a stockholder in Contexo. They had 37 months of litigation in this case. Their live pleading pled Wendt as a stockholder in Contexo. Their findings of fact and conclusions of law filed six days before the trial had the exact same thing. And with that, I'll reserve my last five minutes for rebuttal. Roberts. Yes, you've saved time for rebuttal. Thank you, Mr. Malari. Mr. Brown. Could you explain what effect the finding of the Swiss court has on this litigation that we're dealing with? Yes, Your Honor. I believe it has no effect. I think the issue there, and I haven't, based on what Mr. Clary said, is that the Swiss court found that the transfer of patents from a Palpro entity to Contexo was a valid transfer. What we're talking about today is the ownership of Contexo, the company that those patents were transferred to. And the issue, what the ruling that the district court made was that Palpro LLC, Hartz and Mozart, and Froni own all or part of Contexo. So, and he also made basically the same ruling that the Swiss court did, that the transfer of the patents from Palpro to Contexo was a valid transfer. So that's not an issue today. How could he enter a declaratory judgment against non-parties? I don't believe he was. I believe he made a declaratory judgment against parties to the lawsuit, or regarding parties to the lawsuit, Heindel, Mr. Wendt, Palpro LLC. Those three people and entities are parties to the lawsuit. But I thought he made 1% ownership findings against Mr. Froni and Mr. Hartz and Mozart. He did. It was, there was testimony on both sides that Mr. Froni and Mr. Hartz and Mozart had some ownership interest in Contexo. That was, I believe there was evidence on both sides, by both parties. But they aren't parties. They were not parties, no. What I would like to focus on right now is three things. One is that, I'm sorry, may it please the Court. I'm Andy Brown. I'm an attorney for Appalese, Palpro LLC, Rob Wendt, and Blue Emerald, Inc.  One is the element of surprise, how that is not actually, it was not the case. And the other is the propriety of declaratory relief under case law cited by appellants. The surprise issue, appellants cite Peterson v. Bell Helicopter, and this case dealt with a post-judgment request for injunctive relief, which gave rise to attorney's fees. In Bell Helicopter, there had been a trial in front of a jury. The jury found, answered the questions in such a way that the plaintiff could get no attorney's fees and basically no relief. After the jury left, there were additional pleadings filed with the Court. They asked for an injunctive relief, which I believe was the first time they had asked for that. It was, again, after the jury had left, after trial. The result of that injunctive relief was that now the plaintiff got attorney's fees. So it was something, it was new damages basically for the defendant, a new claim after trial. That's not what happened here at all. What happened here is that we have got Mr. Heindel and Mr. Wendt who have, are disputing ownership and control over Contexo. And this is something that was raised in the complaint of the plaintiffs. It was also discussed thoroughly at trial, and I go into deep discussion about the facts in my brief. And they cannot claim now that they have any sort of surprise. And just the short version is on, let's see, the record page 272 and 282 are the two places where ownership of Contexo were first discussed in the complaint as requests for the Court to make a declaratory judgment ruling. The last one was for an order requiring defendants to divest themselves of any interest in the enterprise, including Contexo. And that is the record at 282. Bell has a baseline rule about Rule 54C, which allows district courts to grant any appropriate relief following a general prayer by plaintiff, even if the plaintiff did not specifically seek it, where that relief is otherwise legally permitted. Here, both sides presented evidence and argument about the ownership and control of Contexo. Mr. Heindel claimed that he owned 100% of it. Mr. Wendt contended that it was a Palpro company formed by Mr. Wendt and Palpro agents. The result was the district court did not believe Mr. Heindel's testimony, that he owned 100% of it. And they ruled that Palpro LLC, Hartz, Motz, and Ferroni owned some or all of Contexo. And that is a very definite statement. It would be like if my wife is planning a trip to Disneyland, and I say, am I going to Disneyland? Or can I go to Disneyland with you? And she says, I'm going to Disneyland with the kids. It's clear to me, I'm not going to Disneyland. That is what the district court ruled here. And I frankly, I don't even know how they have standing to complain that the ruling was not definite enough, because the ruling only gives rights to my client and to non-parties. It does not give rights to Mr. Heindel. It says that despite Mr. Heindel saying he owned 100% of it, it's actually only owned by Palpro LLC, Hartz, Motz, and Ferroni. Appellants make an argument about the bearer shares on page 16 of their reply, as though they have solved some new riddle. The problem is they raised that same issue in front of the district court, and the court apparently found it not credible. So this is not new information. He did not produce any evidence of these alleged bearer shares. The citation that they have to Mr. Williams' testimony is that Mr. Williams never actually saw the bearer shares. They also cite to International Harvester on page 17 of their brief. Again, the facts are just not analogous. They admit here that ownership of Contexo was at issue. They split hairs by saying that Wint's ownership, but not Palpro's ownership, was at issue. Under either International Harvester and Bell, that is not a surprise. They knew the issue was live about the ownership of it. Mr. Heindel knew that he needed to prove that Mr. Wint did not own any of it, and the best way to do that is to show, like he testified to, that Mr. Heindel owned 100 percent, and he could not do that to the satisfaction of the district court. They also cite Alta Marie. Excuse me, counsel. What about the point that's been made in the briefing this morning already, that all along, including in the finding, proposed findings of fact, you were saying Wint was the owner and that's not what the district judge found? It seems to me that the evidence is very thin on who owned it, but it was all the evidence the judge had to go on. How do we get from your assertion that Wint owned it to Palpro owned it? Because there was testimony from both sides, from Mr. Chang in his deposition, Mr. Williams in his deposition, Mr. Wint at trial, stating that the company was formed by Palpro with Palpro money for the benefit of Palpro. And You're telling me the factual path, but your allegation all along was Wint was, and you never put on any evidence, it seems to me. Did you put on any evidence that Wint individually had an interest in this property, in context of? Yes. I believe Mr. Wint testified that his testimony was that it was a Palpro company, that he thought that he, as a managing member of Palpro, had control over. And I think the district court had plenty of complaints about both sides, the credibility frankly of both sides, as well as the organizational history of both sides. Well, how much of this is semantics? They both had an interest at one stage in Palpro, LLC, equal amount, whatever the new company is that has Heindel's interest in that. Wint still has his interest in Palpro? Yes, Your Honor. So is that basically what the district court was finding, it wasn't Wint individually, but it was Wint has an interest through Palpro? And that's one way I look at his declaration to district judges, in a way he was saying Palpro, LLC, isn't one of his findings the breakdown of the ownership of the LLC? It is exactly that. And Wint contended that Mr. Heindel had no ownership in Palpro, LLC. The district court disagreed with that. He basically said that Wint and Heindel own equal parts of Palpro, LLC, which is the, I guess, the parent company, they each own 34.5 percent, and that that company owns Contexo. Therefore, I agree with you entirely, it is just semantics. Contexo is now controlled by this entity that they each own 50 percent of, which goes along with every bit of testimony cited by appellants that I believe both sides, previous to the litigation, had said that it was a 50-50 amount. It was just Mr. Heindel at trial who came out and said he individually owns 100 percent of Contexo. And if you read the section I cited to you in my brief, it's clear that the district court found that not to be credible. He couldn't state how it is that he came to own 100 percent individually. That raises the issue of the declaratory relief. Every case that was cited by appellants that I could see is a case that has nothing to do with the order, the language of the order that the district court entered. They instead have to do with whether the issues are hypothetical or theoretical versus concrete justiciable issues. The cases that he cited to you, I believe public service versus Wyckoff, that case was a dispute that had not yet matured to concrete controversy. It asks the court to declare that something was considered interstate commerce. It was not asking the court to resolve a controversy. The other case that they mentioned today was, let's see, Vantage Trailers. That was also completely, I believe, irrelevant to this issue because they were seeking declaratory relief that there was a — it was either a patent or a trademark violation, but they had not yet — it wasn't right, basically. They were saying that the aluminum trailers that they were producing were not substantially fixed and definite enough when it filed the declaratory action. So again, it was the court being asked to do something hypothetical. The final case I'll mention on that is — oh, I believe the last one they cited, Christus Health. It found a definite controversy. That controversy had happened, declaratory relief was appropriate, and the court determined the rights surrounding it. And it's just as here, there was a definitive event, split between Christus Health and Greenbrier. They were parties to a contract. They split apart. Here there was a definite event. Heindel and Wendt were parties to an LLC agreement. They split apart. Second, there were continuing obligations and rights in Christus as to the obligations of the — one of the parties, whether or not they had to maintain insurance coverage, whether or not they had to pay a development fee in an ongoing manner. Here, the same thing applies. There was a question of who had the rights to use the patents held by Contexo? Who had the duties of paying patent fees? Who had the rights to manufacture or license products using those patents? So the — again, every case that they cite, I believe, has only something to do with rightness. Maryland Casualty, Bayou Liberty, Calderon v. Ashmus. They don't have anything to do with our case, where there was a definite controversy. There are definitely ongoing issues that had to be resolved because of a break between these two men, and the district court resolved those issues. They didn't resolve it to their liking because they said that — the court basically said that Heindel still has to deal with Mr. Wendt and their joint interest in PilePro LLC. Instead of separately owning the big asset, instead he owns it through PilePro LLC, through his company SteelCom, through PilePro LLC. The last issue was something — I just filed additional cases this morning. I don't know how relevant it is. Obviously we feel that there's no need to change the ruling in this case. You know, we didn't like some of it. We do like some of it, but we think that it was correct under the law. If, however, the Court disagrees, the remedy here would be remand, and those are the four cases that I cited. One was actually cited, too, by appellants in their briefing. Are you talking about the copies of the cases you — Yes, Your Honor. Well, three of them are old cases. So one's a 1980, one's a 2005. Yes. And the other one is somewhere. So the — oh, here it is. 1973. So this is really inappropriate to give us. You should have found these before. The only thing that might make sense is the November 7, 2016 case. But even so, didn't that come out before you filed your last brief? The Lippard case? Yeah. Yes. Yes, Your Honor, it did. Okay. So these are not acceptable. Okay. Fair enough. There was one — the B.D. Klick case was cited in a footnote of SmithKline Diagnostics. Would you like me to discuss that one? It was cited by them, so you've had it. As a counter, sure. Okay. And it basically — that case says that it dealt with an appeal from a board. And where a board fails to make a finding of fact on evidence that is undisputed, this court can make that finding because the evidence was undisputed and they just didn't make a finding of fact, which is not the case here because the evidence is very much disputed. As you pointed out, the bulk of this case was a factually intensive case in determining the credibility of the two parties, and so I believe that B.D. Klick, which was cited by the case they cited, which was SmithKline Diagnostics, does not apply, or does not argue for rendering it, but it argues for re-imagining it. If that's everything, you're not required to use all your time. Okay. I'll just sum up with Peterson v. Bell, which I believe is a very important case regarding the surprise that they allege here, dealing with Rule 54c. And the sort of end test that the Court lays out there is that the final plank of 54c is that a plaintiff's entitlement to relief, not specifically pled, has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant. Here, the ownership of Contexo was tested adversarially. Throughout the entire trial, both parties questioned the opposing witness about the ownership of it. They're drawing a line between the fact that somehow that Rob Wendt was saying he individually owned it, but they knew that ownership was at issue the entire time, and they, as a response to Rob Wendt saying that, apparently had their client testify that he was the 100 percent owner of it, which the trial court found not to be credible. Tried by consent does not apply here, because it was not a default judgment. The final plank, at least developed with meaningful notice to the defendant. And again, in our brief, we cite to them multiple times that this issue was raised in the pleadings and the proposed findings of fact and at trial. There is one last cite in response to their argument on page 19 of, I believe, their reply. They cite to page 3310 of the Record on Appeal, and that is a section of Palpro's proposed findings of fact. However, they do not cite to the entire discussion there. If you read down below the paragraphs that they cite, read paragraphs D, E, and F, it directly discusses allegations about ownership of Contexo and the fact that Palpro LLC controls Contexo and that it was formed for Palpro's benefit. Thank you very much. All right. Thank you, Mr. Brown. Mr. Kalari, you've saved time for rebuttal. Your Honor, I think that Mr. Brown is focusing too much on this element of surprise issue. It's not about under whether we were surprised that that's what they were seeking. Mr. Brown ended with this citation to the Record 3310, which is their proposed findings of fact and conclusions of law. And on the very next page in their proposed findings of fact, their claim was that, this is their claim, Palpro LLC's, this is 3311, paragraph G, paragraph H, Palpro LLC's complete operation and financial control by virtue of Wentz and Heindel's beneficial ownership of Contexo. So their claim was always that Wentz had an individual interest. On 3334, paragraph 98, the first conclusion of law, the beneficial ownership of Contexo was fraudulently, intentionally given to Mr. Heindel, Mr. Hartzemuzer, Mr. Ferroni. So the point that we're making here is what we were defending against is Wentz claimed that he was an individual shareholder of Contexo. He bore the burden of proof on that issue. And on cross-examination, I asked him point blank, have you ever been a shareholder of Contexo? And he said, he said no. What I specifically said is, as an individual, did you have any ownership interest in Contexo? This is the record at 29, sorry, 3928, answer, there were many ideas, but I was just told it was a Palpro company, and I never reviewed the documents, question. That's not my question. My question is, as an individual, have you ever had an ownership interest in Contexo? Answer, no. Right there, we've defeated the claim. We've defeated the declaratory relief that they've requested. And it comes down to this, all this vague language about it's a Palpro company. If you just look at the caption, there are five plaintiffs in the case, Palpro LLC, Palpro Sales Corporation, Blue Emerald, which they call Palpro, Inc., and Palpro Steel LP. One is a Delaware LLC, one is a Nevada Corporation, one is a Texas Limited Partnership, the other is a Delaware Corporation. This whole notion that it's just a Palpro company, that can't support a finding that Palpro LLC is an owner of Contexo. And I think what Mr. Brown is ignoring is the phrase says wholly or partially owned. That's one of our biggest complaints with the ruling, with the declaration. It doesn't say that it's wholly owned by Palpro LLC, Hartz & Mozer, and Ferroni. Even that would be problematic because we don't know what percentages there are. And Mr. Brown said at least four or five times that Mr. Heindel said he was 100 percent owner of Contexo. That's the testimony actually that was that he was 98 percent and that Ferroni and Hartz & Mozer each had a percent. But the big thing here is the wholly or partially owned. It's just not enforceable. What does that mean? It doesn't exclude Heindel on its face. If he wanted to find that Heindel had no ownership interest, that's all they had to say. They didn't seek a declaration in paragraph 289 of the- But there was a footnote that said Heindel had no ownership. No, the footnote said that Heindel had, when Heindel transferred his interest to Steel Com, which is now the current holder. The footnote used to say when he did that, he gave up his interest in Palpro, Inc. And the court said then we appealed that because we have another case where that was important. And the court came back and said, no, he didn't give up his interest in Palpro, Inc. He gave up his interest in Palpro, LLC, which we agree. Why did he give it up? Because he gave it to Steel Com. So Heindel, as we sit here today, Heindel is not a member of Palpro, LLC. Steel Com Limited is a 34.5% member of Palpro, LLC. And lastly, on the remand issue, when they brought it up in their brief, they didn't use the word remand. They just said, they used the phrase sent back. We mentioned that in our, and they don't cite any cases. We mentioned that in our reply brief, that they were very careful not to use the word remand, because it's not appropriate here, especially given the non-parties and the fact that there's no evidence to support the ruling. So we would submit on the briefing, Your Honor. Yes, thank you, Mr. Kalar. Your case is under submission. The court will take a brief recess before.